UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TINA S.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CASE NO. C19-1344 BAT

**ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE CASE**

Plaintiff appeals the ALJ's decision finding her not disabled. Dkt. 13. The ALJ found depression, bipolar disorder, anxiety disorder, osteoarthritis and obesity are severe impairments; plaintiff has the residual functional capacity (RFC) to perform light work with additional limitations; and plaintiff is not disabled because she can perform past relevant work as a billing clerk and telemarketer and alternatively other jobs in the national economy. Tr. 11-22.

Plaintiff contends the ALJ misevaluated her testimony and that the evidence she submitted post-hearing require the Court to remand the matter either for an award of benefits or for further administrative proceedings. For the reasons below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## DISCUSSION

**A.    Plaintiff's Testimony**

The ALJ discounted plaintiff's testimony about her limitations first finding plaintiff's testimony about her physical limitations is inconsistent with the medical record. Tr. 17. Plaintiff contends the ALJ erred arguing the medical record shows plaintiff consistently suffers from foot, knee, and leg pain, that she is treated with pain medications, braces and injections, and that she has been diagnosed with chronic pain syndrome. Dkt. 10 at 4-6. The ALJ acknowledged the medical records shows plaintiff suffers from pain but found the record did not support the limitations plaintiff claimed.

The Court cannot say the ALJ's assessment is unreasonable. During the relevant time period, plaintiff was primarily treated with pain medications, wore a brace and had injections. Surgery was not indicated. Tr. 300. Plaintiff's treating doctor did not opine during the relevant period plaintiff could not walk or work; if she walked or stood she needed to rest for days; or there was some type of medical problem preventing plaintiff from working. Rather, by and large, Donald Dillinger, M.D., reported plaintiff was doing fairly well pain-wise; plaintiff was either working or attending classes full time, and that she walked for one hour every other day. Given the record, even assuming the evidence is susceptible to more than one rational interpretation, the Court is required to uphold the ALJ's findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). The Court accordingly affirms the ALJ's determination as to plaintiff's physical and pain complaints.

The ALJ also rejected plaintiff's testimony about her mental limitations. The ALJ noted the record showed plaintiff appeared at the Everett Clinic "visibly shaking and tearful," expressed increased suicidal thoughts and was diagnosed with depression and anxiety disorder. Tr. 17. The ALJ noted when plaintiff went to the Clinic she was not participating in any mental health counseling. *Id.* The ALJ found in some instances plaintiff endorsed depressed mood and a

lack of motivation but in other instances showed normal mood and affect. *Id.* at 17-18. The ALJ further found plaintiff's mental conditions do not "appear to affect her ability to engage in social settings," and plaintiff's condition improved while "on Cymbalta and Wellbutrin." Tr. 18. The ALJ concluded an RFC that does not require production pace work and allows for being off task 10 percent accounts for limitations caused by plaintiff's mental conditions. *Id.*

Plaintiff argues the record shows on July 13, 2015, plaintiff was visibly shaking and tearful denied suicidal thoughts, that mental health treatment stopped, and then resumed after the relevant period. Tr. 279-280. Plaintiff argues the ALJ erred in rejecting plaintiff's mental health testimony on the grounds the record lacked any opinions from any mental health treating source and should have developed the record further. Dkt. 10 at 6.

These arguments fail. Plaintiff argues the ALJ's rationale is erroneous citing to a portion of the ALJ's decision not directed to plaintiff's testimony but to the ALJ's assessment of the medical evidence. *Id.* citing to Tr. 19 ("Under Social Security Regulations, medical opinions are statements from Physicians and psychologists . . . . In the present case the undersigned found no treating source opinions . . ."). Plaintiff has not assigned error to the ALJ's assessment of the medical evidence and thus plaintiff's citation to the portion of the decision regarding the medical opinions do not establish reversible error.

Turning to plaintiff's argument about the adequacy of the record, the ALJ's duty to develop the record is triggered only if there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). The record shows, as plaintiff acknowledges, she was seen in July 2015, and did not receive much mental health treatment until **after** the relevant period. There is no ambiguity in the record that during the relevant period, there is virtually no evidence supporting plaintiff's mental

health claims. The ALJ thus had no duty to further develop the medical record and the Court accordingly rejects the argument the ALJ erred in failing to develop the record to essentially support plaintiff's testimony that her depression caused fatigue, loss of focus, the need to lie down and going off task. Dkt. 10 at 9.

**B.      Evidence Presented to the Appeals Council**

Plaintiff also contends the Court should remand the case for further proceedings or benefits because she submitted a letter to the Appeals Council that undermines the ALJ's decision. Dkt. 10 at 10. In this letter dated February 1, 2019, Jessica Lund DPM, TEC Podiatry stated:

> [Plaintiff] was seen at the Everett Clinic for bilateral foot pain. She has been diagnosed with chronic pain from plantar fasciitis of both feet and arthritis of the right foot. Even with custom ankle-foot-orthotics she is not able to tolerate prolonged standing for work. She notes that prolonged standing cause swelling of her lower extremities and at time this can prevent her from wearing the braces. The braces do help, but not enough to allow her to work without pain. Since 2012 she has failed numerous treatment options including injections, custom foot orthotics, exercises, change of shoes and rest and immobilization. She has elected not to have surgery because of the poor efficacy with the available surgery options.

Tr. 35. The Commissioner agrees the Court may consider Dr. Lund's letter but disagrees it supports reversal because the "letter has little probative value." Dkt. 13 at 10. Plaintiff argues Dr. Lund's letter establishes plaintiff cannot "tolerate prolonged standing, throughout the relevant period, and "supports a reasonable probability of changing the outcome of the case under sentence four." Dkt. 10 at 11.

An examination of Dr. Lund's letter shows otherwise. First, the letter was drafted in 2019. The third and fourth sentences indicate plaintiff cannot "tolerate prolonged standing for work," because plaintiff states prolonged standing "cause swelling of her lower extremities and

at time this can prevent her from wearing the braces." Tr. 35. This sentence does not set forth the time period to which Dr. Lund is referring, and thus does not on its face undermine the ALJ's decision.

Second, as the Commissioner points out, Dr. Lund's 2019 opinion letter is not consistent with treatment notes from the relevant period. Plaintiff was treated by Donald Dillinger, M.D. during the relevant period, i.e, before March 31, 2016. On January 9, 2015, Dr. Dillinger noted plaintiff was "doing well" and she was "on feet all day at work, 9hrs/shift." Tr. 375. The doctor again noted on March 29, 2015, plaintiff was doing well" and "on feet all day at work 9 hrs/shift." Tr. 372. In July 2015, Dr. Dillinger noted plaintiff was "working or attending class full-time medical coding," Tr. 370, she was "doing well," and walking one hour every other day. Tr. 369. Dr. Dillinger in September 2015 noted plaintiff's pain was "stable" and she was walking every other day for an hour. Tr. 367. In December 2015, Dr. Dillinger reported plaintiff was "working or attending class full-time," her pain was stable, and she was walking an hour every other day. Tr. 364-65. On March 22, 2016, the doctor noted plaintiff was working or attending class full time, Tr. 362, plaintiff was "doing okay" pain-wise; and she was walking an hour every other day. Tr. 361. Dr. Dillinger reported plaintiff's pain was essentially the same from March 2016 to March 2017 (*See* Tr. 352- 63); plaintiff by March 2017 had become a fill-time caregiver for two grandkids, Tr. 352, and that she was walking one hour every other day for exercise. *Id.*

Dr. Lund's 2019 opinion about plaintiff's functioning and failed treatment efforts do not square with the treatment Dr. Dillinger prescribed during the relevant period which resulted in stabilizing plaintiff's pain complaints and a higher degree of functioning than Dr. Lund later opined in 2019. Additionally, although Dr. Lund indicated plaintiff elected not to have surgery because of the poor efficacy with the available surgery options, a treatment note from November

2016, contradicts the doctor's statement; the treatment note indicated "patient advised there is no surgical indication based upon imaging studies. Pain is out of proportion for MRI findings." Tr. 300.

In short, the record shows plaintiff was treated by Dr. Dillinger during the relevant period.[1] Dr. Lund's 2019 opinion regarding plaintiff's functioning does not refer to the relevant time period, and treatment notes from the relevant period contradict Dr. Lund's 2019 assessment of plaintiff's functioning. Dr. Dillinger did not indicate the treatment primarily provided (pain medication, braces and injections) were failures and instead plaintiff reported to him she was doing well or okay. This contradicts Dr. Lund's opinion that since 2012, plaintiff's treatment failed. And finally, the record shows that during the relevant time period, surgery was not indicated, contradicting Dr. Lund's statement that plaintiff elected not to have surgery.

The Court accordingly concludes Dr. Lund's post-hearing opinion letter does not undermine the ALJ's decision and is not grounds to reverse the Commissioner's final decision.

## CONCLUSION

For the reasons above, Court **AFFIRMS** the Commissioner's final decision **DISMISSES** the case with prejudices.

DATED this 14th day of January, 2020.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

---

[1] Dr. Lund informed plaintiff he was retiring in June 2017. Tr. 353.